## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Raphael Mendez, | Case No. 19-cv-2820 (NEB/TNL) |
| Plaintiff, | |
| v. | |
| FMC Facility Section, Warden S. Kallis, Associate Warden Kris Goldey, Unit 1/2 Correctional Manager C. Orum, Unit 1/2 Correctional Officer Mr. Beadling, Unit 1/2 Correctional Officer Mr. Kreye, Associate Warden Program G. Cooper, and Captain J. Wades, | REPORT & RECOMMENDATION |
| Defendants. | |

Raphael Mendez, Reg. No. 01649-094, FMC Rochester Unit 1/2, P.O. Box 4000, Rochester, MN 55903-4000 (pro se Plaintiff); and

Andrew S. Tweeten, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Defendants).

## I. INTRODUCTION

This matter comes before the Court on Defendants FMC Facility Section, Warden S. Kallis, Associate Warden Kris Goldey, Unit 1/2 Correctional Manager C. Orum, Unit 1/2 Correctional Officer Mr. Beadling, and Unit 1/2 Correctional Officer Mr. Kreye's[1] "Motion to Dismiss," ECF No. 36, and pro se Plaintiff Raphael Mendez's "Motion for Abeyance and Immediate Investigation on [sic] the Defendants et al[.]," ECF No. 49.

---

[1] Defendants Associate Warden Program G. Cooper and Captain J. Wades were previously dismissed from this litigation. *See generally* ECF No. 9.

1

These motions have been referred to the undersigned for a report and recommendation to the district court, the Honorable Nancy E. Brasel, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.[2]

Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' motion be **GRANTED**; Plaintiff's motion be **DENIED**; and this matter be **DISMISSED WITHOUT PREJUDICE**.

## II. ALLEGATIONS[3]

Plaintiff has been civilly committed pursuant to 18 U.S.C. § 4246.[4]  Compl. ¶ 2, ECF No. 1.  Plaintiff is currently being held at the Federal Medical Center located in Rochester, Minnesota ("FMC Rochester").  Compl. ¶ 1.  Following the dismissal of Plaintiff's false-imprisonment claim, *see generally* ECF No. 9, the sole remaining claim challenges the conditions of Plaintiff's cell.

In early October 2019, Plaintiff sent an "electronic message complaint" to Defendant FMC Facility Section, stating that outside air was coming into his cell and a cold front was expected.  Compl. ¶¶ 6-7.  Plaintiff did not hear back.  Compl. ¶ 8.

The next day, October 8, Plaintiff cut a piece of cardboard "to fit the window in his cell as a Temporary measure until Facilities c[ould] get to the Window problem."  Compl.

---

[2] To the extent Plaintiff's opposition to Defendants' motion to dismiss can be read as requesting a hearing on Defendants' motion, Pl.'s Resp. at 2, ECF No. 43, the Court previously indicated that this motion would be determined on the papers, without a hearing.  ECF No. 42 at 3.  *See also* D. Minn. LR. 7.1(c).

[3] At this stage of the proceedings, Plaintiff's factual allegations are assumed to be true.  *See, e.g.*, *Ahmed v. Weyker*, 984 F.3d 564, 567 (8th Cir. 2020) ("At the motion-to-dismiss stage, we assume that all factual allegations in their complaints are true." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[4] *See, e.g.*, *Mendez v. Peterson*, No. 16-cv-2644 (ADM/BRT), 2018 WL 2193108, at *1 (D. Minn. May 14, 2018) (civil commitment in 1991 in the Eastern District of North Carolina) (citing *Mendez v. Bureau of Prisons*, No. 08-cv-4971 (JMR/RLE), 2009 WL 3856925, at *1 (D. Minn. Nov. 17, 2009)); *see also, e.g.*, *Mendez v. Paul*, No. 19-cv-183 (PAM/LIB), 2019 WL 5150038, at *3 (D. Minn. July 23, 2019), *report and recommendation adopted*, 2019 WL 3928871 (D. Minn. Aug. 20, 2019), *aff'd*, No. 19-2935, 2020 WL 1154790 (8th Cir. Jan. 22, 2020).

¶ 9. That same day, Plaintiff also attempted to get permission from Defendant Warden S. Kallis to use the cardboard in this manner "without Correctional interference." Compl. ¶ 10. Kallis responded on October 10, and instructed Plaintiff to raise his concerns with Defendant C. Orum, the unit manager. Compl. ¶ 11; *see* ECF No. 1-1 at 15. Plaintiff forwarded Kallis's response to Orum, and received no response. Compl. ¶¶ 12-13.

On October 11, Plaintiff approached Defendant Associate Warden Kris Goldey "in the chow hall" regarding the use of the cardboard. Compl. ¶ 14. Goldey pointed to a lieutenant, and told Plaintiff to "get with this Lieutenant here." Compl. ¶ 14. "The [lieutenant] told Plaintiff to eat first then see him." Compl. ¶ 15. The lieutenant had to leave, however, before Plaintiff finished eating to attend to an "incident," which left Plaintiff's request "unaddressed." Compl. ¶ 15.

That same day, which was the Friday before a Monday holiday, Defendant Beadling[5], a correctional officer, instructed Defendant Kreye[6], another correctional officer, to remove the piece of cardboard. Compl. ¶ 14. Kreye subsequently removed the piece of carboard. Compl. ¶ 14.

Over the next two days, Plaintiff alleges that the removal of the cardboard caused him to be exposed to the cold as temperatures outside were in the low to mid-30s with winds up to 33 miles per hour, resulting in windchill temperatures in the high-teens and low-20s. Compl. ¶¶ 15-16. Plaintiff put on multiple articles of clothing, including a jacket, and used two blankets in an effort to keep warm, but "still could not get any sleep." Compl.

---

[5] Beadling's first name is not listed in the Complaint.
[6] Kreye's first name is also not listed in the Complaint.

¶ 16. Plaintiff alleges that Beadling and Kreye removed the only protection he had from the cold. Compl. ¶ 17.

### III. MOTION TO DISMISS

Defendants move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[7]

**A. Screening**

As an initial matter, Plaintiff asserts that the Court has already determined he has "a viable claim" when this matter was screened pursuant to 28 U.S.C. § 1915(e) in connection with his application to proceed in *forma pauperis* ("IFP"). Pl.'s Resp. at 3. According to Plaintiff, this determination was reflected in the Court directing that summonses be issued and service be made. *See generally* ECF No. 4.

"The provisions of 28 U.S.C. § 1915(e) apply to all persons proceeding IFP and are not limited to prisoner suits . . . ." *Carter v. Schafer*, 273 F. App'x 581, 582 (8th Cir. 2008) (per curiam); *see also Pendleton v. Sanders*, 565 F. App'x 584, 584-85 (8th Cir. 2014) (per curiam). Among other things, § 1915(e) directs the Court to "dismiss the case at any time

---

[7] Plaintiff's response to Defendants' motion contains handwritten page numbers delineating the particular page number out of a total of five pages, *e.g.*, "Page 1 of 5." *See generally* Pl.'s Resp. In their reply, Defendants assert that "[o]nly four pages are included in the document as filed on CM/ECF." Defs.' Reply at 3 n.1, ECF No. 44; *see also generally* Decl. of Andrew Tweeten, ECF No. 45. These five pages of Plaintiff's response consist of a four-page memorandum, docketed at ECF No. 43, and a one-page certificate of service, docketed at ECF No. 43-2. All were docketed upon receipt.
  Plaintiff also filed a surreply to Defendants' reply. *See generally* ECF No. 48. Under the Court's Local Rules, surreplies are not permitted in connection with a dispositive motion without prior permission. D. Minn. LR 7.1(c)(1)-(3), (i). Plaintiff was not given leave to file a surreply in the Court's briefing order, ECF No. 72 at 3, nor did he seek prior permission from this Court. The Court previously told Plaintiff that his pro se status does not excuse him from following the Federal Rules of Civil Procedure and Local Rules of this Court. ECF No. 19 at 1-2. *See Bennett v. Dr. Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002) (pro se status does not entitle litigant to disregard Federal Rules of Civil Procedure or court's local rules); *Oprenchak v. Am. Family Mut. Ins. Co.*, No. 11-cv-425 (PJS/TNL), 2012 WL 1247216, at *15 (D. Minn. Mar. 26, 2012) ("Plaintiff's pro se status does not excuse him from following the Federal Rules of Civil Procedure and Local Rules of this Court."), *report and recommendation adopted*, 2012 WL 1253011 (D. Minn. Apr. 13, 2012). The Court has not considered this surreply.

if the [C]ourt determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

But, "a court's decision allowing some claims to go forward at the initial screening stage does not insulate those claims from later review on a motion to dismiss." *Hendrix v. Pactiv LLC*, 488 F. Supp. 3d 43, 50-51 (W.D. N.Y. 2020). To conclude otherwise "would deprive Defendants of the basic procedural right to challenge the sufficiency of the pleadings." *James v. Perez*, No. 2:08-CV-01857-RRC, 2012 WL 5387676, at *2 (E.D. Cal. Nov. 1, 2012); *accord Braun v. Hanson*, No. 18-cv-3355 (JNE/ECW), 2020 WL 1496580, at *2 (D. Minn. Jan. 27, 2020), *report and recommendation adopted*, 2020 WL 1493884 (D. Minn. Mar. 27, 2020); *Jackson v. Dayton*, No. 15-cv-4429 (WMW/TNL), 2016 WL 11198354, at *3 (D. Minn. Dec. 16, 2016), *report and recommendation adopted as modified*, 2017 WL 499596 (D. Minn. Feb. 7, 2017). Accordingly, "[a]n initial screening decision permitting some claims to proceed does not amount to a judicial imprimatur endorsing the validity of those claims." *Hendrix*, 488 F. Supp. 3d at 51. Therefore, the fact that this Court previously recommended dismissal of portions of Plaintiff's lawsuit and directed service on his conditions-of-confinement claim, *see generally* ECF Nos. 3-4; *see also generally* ECF No. 9, does not preclude Defendants from arguing that Plaintiff has failed to state a claim on which relief may be granted.

### B. Legal Standard

In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818,

820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id*. at 570. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"In evaluating whether a pro se plaintiff has asserted sufficient facts to state a claim, [courts] hold a pro se complaint, however inartfully pleaded, to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quotation omitted). But, "[a]lthough pro se complaints are to be construed liberally, 'they still must allege sufficient facts to support the claims advanced.'" *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Stated differently, "this standard does not excuse pro se complaints from 'alleg[ing] sufficient facts to support the claims advanced.'" *Gerstner v. Sebig, LLC*, 386 F. App'x 573, 575 (8th Cir. 2010) (per curiam) (alteration in original) (quoting *Stone*, 364 F.3d at 914). As the Eighth Circuit Court of Appeals has explained,

> [w]hen we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.

6

*Stone*, 364 F.3d at 915.

For the reasons discussed below, Plaintiff has failed to state a claim upon which relief can be granted.

### C. No Relief Specified

Plaintiff has failed to comply with Rule 8 of the Federal Rules of Civil Procedure. As Defendants point out, Plaintiff "is silent as to the relief sought." Defs.' Mem. in Supp. at 5, ECF No. 38. Under Rule 8, in order to state a claim for relief, a pleading must contain "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3). Here, Plaintiff does not specify what sort of relief he seeks from Defendants or the Court based on the events in question. Plaintiff has demanded a jury trial, but has not articulated whether he is seeking monetary damages, injunctive relief, or something else entirely.

### D. Conditions of Confinement

As previously stated, as best as this Court is able to tell, the thrust of Plaintiff's lawsuit is a constitutional claim based on the conditions of his cell under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

#### 1. Availability of *Bivens* Questionable

*Bivens* claims are for constitutional violations allegedly committed by federal officials. *Mendoza v. U.S. Immigration & Customs Enf't*, 849 F.3d 408, 415 n.3 (8th Cir. 2017); *see also Iqbal*, 556 U.S. at 675. "On only three occasions has the Supreme Court implied a cause of action under *Bivens*." *Farah v. Weyker*, 926 F.3d 492, 497 (8th Cir. 2019) (citing *Carlson v. Green*, 446 U.S. 14, 16-18 (1980); *Davis v. Passman*, 442 U.S.

7

228 (1979); *Bivens*, 403 U.S. at 397)); *accord Ahmed*, 984 F.3d at 567; *see also Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55 (2017). These three occasions involved a person's Fourth Amendment claim for damages stemming from an unlawful arrest and search (*Bivens*); "a former congressional staffer's Fifth Amendment claim of dismissal based on sex" (*Davis*); and "a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment" (*Carlson*). *Hernandez*, 140 S. Ct. at 741; *see also, e.g.*, *Abbasi*, 137 S. Ct. at 1854-55.

"After those decisions, however, the [Supreme] Court changed course." *Hernandez*, 140 S. Ct. at 741. "Expanding *Bivens* is, according to the Supreme Court, 'now a disfavored judicial activity.'" *Ahmed*, 984 F.3d at 567 (quoting *Abbasi*, 137 S. Ct. at 1857) (internal quotation marks omitted); *see also Hernandez*, 140 S. Ct. at 742. In fact, the Supreme Court has "'consistently refused to extend *Bivens* to any new context or new category of defendants' for almost forty years." *Farah*, 926 F.3d at 498 (quoting *Abbasi*, 137 S. Ct. at 1857); *see also Hernandez*, 140 S. Ct. at 743 ("And for almost 40 years, we have consistently rebuffed requests to add to the claims allowed under *Bivens*.").

Pre-*Abbasi*, in *Spencer v. Haynes*, the Eighth Circuit held that it was error to dismiss without prejudice a conditions-of-confinement claim raised by a pro se prisoner in a habeas corpus petition without giving the prisoner "the option to pursue the claim under [*Bivens*]." 774 F.3d 467, 468, 471 (8th Cir. 2014). Since the Supreme Court's decision in *Abbasi*, a number of courts have recognized conditions-of-confinement claims as presenting "a new *Bivens* context." *See, e.g.*, *Jackson v. Logsdon*, No. 3:21-cv-00042-BRW-JJV, 2021 WL 886219, at *2 (E.D. Ark. Mar. 9, 2021); *Tate v. Harmon*, No. 7:19-cv-00609, 2020 WL

8

7212578, at *4-5 (W.D. Va. Dec. 7, 2020); *Oden v. True*, No. 3:18-cv-600-GCS, 2020 WL 4049922, at *2-4 (S.D. Ill. July 20, 2020); *Elhady v. Pew*, 370 F. Supp. 3d 757, 768-69 (E.D. Mich. 2019); *cf. Abbasi*, 137 S. Ct. at 1858-60, 1863-65.

For reasons discussed in the next section, the Court need not resolve whether *Bivens* is available to Plaintiff because, even assuming for sake of argument that it is available, Plaintiff's conditions-of-confinement claim nevertheless fails for failure to state a claim.

### 2. No Constitutional Violation Alleged

Due to his civil commitment, Plaintiff's conditions-of-confinement claim is a due process claim arising under the Fifth Amendment, rather than the Eighth Amendment. *Mendez v. FMC Minn.*, No. 16-cv-845 (ADM/BRT), 2017 WL 2312889, at *6 (D. Minn. Mar. 10, 2017), *report and recommendation adopted*, 2017 WL 2312870 (D. Minn. May 26, 2017), *aff'd*, No. 17-2438, 782 F. App'x 607 (8th Cir. 2018); *see Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) ("Although 'the Eighth Amendment has no application' until there has been a 'formal adjudication of guilt,' the Fourteenth Amendment gives state pretrial detainees—just as the Fifth Amendment gives federal pretrial detainees—rights which are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983))); *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004) ("[B]ecause an involuntarily committed psychiatric patient is confined for treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply"); *see also Youngberg v. Romeo*, 457 U.S. 307, 324-25 (1982).

"Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg*, 457 U.S. at 321-22. In *Karsjens v. Lourey*, the Eighth Circuit recently made clear that the standard articulated by the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520 (1979), "applies equally to conditions of confinement claims brought by pretrial detainees and civilly committed individuals, as neither group may be punished." 988 F.3d 1047, 1053 (8th Cir. 2021); *see id.* at 1052; *see also Beaulieu v. Ludeman*, 690 F.3d 1042-43 (8th Cir. 2012); *cf. Karsjens*, 988 F.3d at 1053 n.5. Thus, "the proper inquiry" is whether the conditions complained of "amount to punishment." *Bell*, 441 U.S. at 535; *accord Karsjens*, 988 F.3d at 1052-53; *see also Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 907 (8th Cir. 2020). "In analyzing whether a condition of confinement is punitive, courts 'decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" *Karsjens*, 988 F.3d at 1052 (quoting *Bell*, 441 U.S. at 538). "Unless the detainee can show an expressed intent to punish, that determination will generally turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to such alternative purpose." *Id.* (quotation omitted); *see also Bell*, 441 U.S. at 538.

Generally speaking, "governmental authorities cannot deny basic human necessities to persons in custody." *Green v. Baron*, 879 F.2d 305, 309 (8th Cir. 1989). Such "necessities include light, heat, ventilation, sanitation, clothing, and a proper diet." *Id.* (quotation omitted). But, "[n]ot every disability imposed during . . . [confinement]

10

amounts to 'punishment' in the constitutional sense . . . ." *Bell*, 441 U.S. at 537; *accord Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). "[T]he fact that . . . [confinement] interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" *Bell*, 441 U.S. at 537. "A minimal deprivation does not violate the Constitution." *Green*, 879 F.2d at 309 (citing *Bell*, 441 U.S. at 539 n. 21); *see also Stearns*, 957 F.3d at 909; *Smith*, 87 F.3d at 268.

Courts "consider several factors in determining the constitutionality of deprivations, including the degree and duration of the deprivations, the reason for the deprivations, and the other surrounding circumstances." *Green*, 879 F.2d at 309; *cf. Wilson v. Seiter*, 501 U.S. 294, 304 (1991) ("*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets."); *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997) ("Taken as a whole, the cases suggest that courts should examine several factors in assessing claims based on low cell temperature, such as the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold."). "The length of time a [detainee] is subjected to harsh conditions is a critical factor in [the] analysis." *Smith*, 87 F.3d at 269; *accord Stearns*, 957 F.3d at 909. "However, any analysis of confinement conditions must be based on the

11

totality of the circumstances, " *Smith*, 87 F.3d at 268, not on "any particular condition in isolation," *Stearns*, 957 F.3d at 909; *accord Karsjens*, 988 F.3d at 1054; *cf. Strope v. McKune*, 382 F. App'x 705, 708 (10th Cir. 2010) ("Of course, temperature per se does not tell the whole story.").

Taking the allegations in the Complaint as true, Plaintiff was subject to cold drafts for approximately three days after the piece of cardboard was removed. Plaintiff does not allege that his cell was otherwise without heat. *See Green*, 879 F.3d at 310. Nor does Plaintiff allege that he became ill or suffered any consequences, such as hypothermia or frostbite, as a result of the drafts; Plaintiff only alleges difficulty sleeping. *See Smith*, 87 F.3d at 268. Moreover, Plaintiff states that he had multiple articles of clothing—including a jacket—and two blankets available to him in his cell to shield himself at least partially from the drafts. The Court appreciates that these conditions were not ideal and the cold drafts were uncomfortable for Plaintiff. "[D]iscomfort alone[, however,] does not violate the Constitution." *Green*, 879 F.3d at 310; *see also Bell*, 441 U.S. at 539 n. 21. Given the limited time Plaintiff was subject to the cold drafts and the availability of other means by which he could at least partially protect himself against the cold, Plaintiff's allegations regarding the removal of the cardboard and resulting conditions do not implicate constitutional concerns. *See Bell*, 441 U.S. at 537, 539 n. 21; *Green*, 879 F.3d at 310; *Smith*, 87 F.3d at 268; *see also Stickley v. Byrd*, 703 F.3d 421, 423-24 (8th Cir. 2013).

Accordingly, Plaintiff has failed to state a claim for violation of his Fifth Amendment rights.[8]

## IV. MOTION FOR ABEYANCE

Plaintiff also filed a motion in late December 2020, stating that he tested positive for COVID-19. Plaintiff requests an "abeyance" so that he does not "have to put [his] hands on paper[s] like these [and] send them to the Court." ECF No. 49 at 2. Plaintiff also requests that the Court "check up on [him] every so often." ECF No. 49 at 2.

At the time of Plaintiff's diagnosis and isolation, Defendants' motion to dismiss was fully briefed and there were no deadlines for the Court to hold in abeyance. *See* ECF No. 42 at 3. *See also* D. Minn. LR 7.1(c)(1)-(3). As for Plaintiff's request that the Court grant him injunctive relief in the form of periodic welfare checks, Plaintiff has not provided any authority for such a request. Further, Plaintiff's request is unrelated to the conditions-of-confinement claim before the Court which concerns his cell and events that took place in October 2019, not some other room/space at FMC Rochester, heating and cooling more generally, or FMC Rochester's response to COVID-19. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) ("[A] party moving for a preliminary injunction must

---

[8] Because the Court concludes that Plaintiff has failed to state a claim, the Court declines to address Defendants' individual and official-capacity arguments. *See* Defs.' Mem. 4-5. In any event, "it is well-settled that *Bivens* actions may be brought against individual defendants only in their personal, rather than official, capacities." *Hussein v. Sessions*, No. 16-cv-780 (SRN/SER), 2017 WL 1954767, at *3 (D. Minn. May 10, 2017) (citing *Buford v. Runyon*, 160 F.3d 1203 n.6 (8th Cir. 1998)); *accord Hill v. Holinka*, No. 06-cv-4720 (PJS/JJG), 2008 WL 549928, at *2 (D. Minn. Feb. 27, 2008) ("By comparison, a *Bivens* claim does not permit relief against a government employee in an official capacity. The only relief is for damages from the employee in an individual capacity."); *see also Mendez v. Paul*, No. 18-cv-2817 (PJS/HB), 2019 WL 8370790, at *3-4 (D. Minn. Dec. 10, 2019), *report and recommendation adopted*, 2020 WL 563941 (D. Minn. Feb. 5, 2020), *aff'd*, No. 20-1353, 2020 WL 4876327 (8th Cir. June 1, 2020); *cf. Wattleton v. Hodge*, No. 18-cv-793 (ECT/BRT), 2019 WL 2432159, at *2 (D. Minn. June 11, 2019) ("However, in cases involving *Bivens* claims—civil actions alleging violations of the Federal Constitution by officials of the federal government in their individual capacity only—courts in this District have construed suits that are silent to be against defendants in their individual capacities." (citing cases)), *aff'd*, 789 F. App'x 964 (8th Cir. 2020).

necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."). Lastly, with due respect to Plaintiff's beliefs concerning his personal safety, Plaintiff's speculation that FMC Rochester staff may "take advantage" of his COVID-19 diagnosis and isolation is not sufficient to warrant the extraordinary remedy of injunctive relief. *See, e.g.*, *Wilwal v. Nielsen*, 346 F. Supp. 3d 1290, 1301 (D. Minn. 2018) ("[A] plaintiff's speculation that a future injury may occur is not sufficient to warrant injunctive relief. A plaintiff must show that the threat of injury is real and immediate." (quotation and citation omitted)); *Jackson v. Macalester Coll.*, 169 F. Supp. 3d 918, 922 (D. Minn. 2016) ("[S]peculative harm cannot justify the issuance of a preliminary injunction."); *see also Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982) ("The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or by the common law." (quotation omitted)).

Therefore, the Court recommends that Plaintiff's motion be denied.

[Continued on next page.]

## V. RECOMMENDATION

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' "Motion to Dismiss," ECF No. 36, be **GRANTED**.

2. Plaintiff's "Motion for Abeyance and Immediate Investigation on [sic] the Defendants et al[.]," ECF No. 49, be **DENIED**.

3. This matter be **DISMISSED WITHOUT PREJUDICE**.


Date: April __30__, 2021                              *s/ Tony N. Leung*
                                                      Tony N. Leung
                                                      United States Magistrate Judge
                                                      District of Minnesota

                                                      *Mendez v. FMC Facility Section et al.*
                                                      Case No. 19-cv-2820 (NEB/TNL)


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).

15